SAMUEL, Judge.
Plaintiff filed this suit against three defendants, The Payne Company, James W. Knobloch, d/b/a Help!!! Service Company, and Charles T. Genovese, d/b/a Buddy’s Air Conditioning, Heating and Refrigeration, for damages allegedly arising from redhibi-tory defects and breach of contract involving the repair and restoration of plaintiff’s central air conditioning system.
After a trial on the merits, there was judgment in favor of plaintiff and against only Genovese in the sum of $2,220.60. The judgment dismisses the suit against the other two defendants. Genovese has appealed. Plaintiff has answered the appeal seeking an increased award of $5,489.76.
On April 30, 1965 plaintiff had a three-ton Chrysler central air conditioning and heating system installed in his residence for the sum of $1,332. For approximately seven years no service or maintenance work was performed on the system. Some time in April, 1972 it appears a leak had developed in either the liquid or suction line between the house and the compressor-condenser unit outside. A friend unsuccessfully attempted to solder the line. In May, 1972 appellant came to plaintiff’s home and remedied that situation.
In April, 1973, plaintiff again called appellant because the air conditioning system was not performing adequately. After a discussion of the problem, appellant installed a three-ton Payne compressor-condenser unit on the slab outside plaintiff’s home to replace the then improperly functioning three-ton Chrysler unit. Defendant charged plaintiff $597.60 for the new unit and his services. In addition, plaintiff paid defendant the sum of $30 for a “Service Contract”. This $30 service contract forms the basis for most of their dispute.
The next week plaintiff again called appellant because water was leaking down the living room walls. Appellant found the emergency drain in the attic had been displaced by someone. He remedied that situation and he acknowledges he could have dislodged the emergency drain himself. Approximately ten days after appellant’s installation, the system’s main drain became clogged, but appellant refused to perform any service or make any repairs in connection therewith. He advised plaintiff his service contract was restricted to the compressor-condenser unit and did not cover service to the remainder of the system.
Plaintiff then called the manufacturer, The Payne Company, who recommended Help!! ! Service Company. On August 6, 1973, Help!! ! -Service Company inspected the system and replaced a liquid line, installed a new motor and cleaned the blower and the evaporator coils. According to plaintiff, the system still did not cool his home. At plaintiff’s request, on August 18, 1973 a representative of Berner’s performed an inspection and found the evaporator coil still dirty, excessive refrigerant in the system, and blocked tubes. Berner’s performed some repairs in order to make the system work and made recommendations for additional repairs. No further repair was made until May, 1975, approximately two weeks prior to trial. At that time Berner’s replaced the coil in plaintiff’s system.
The record establishes, and plaintiff’s counsel stipulates, this case does not involve a redhibitory defect. On the contrary, the only questions for our decision are: (1) the nature of the service contract between plaintiff and appellant; and (2) whether *612 there was any breach of that contract by the appellant.
Plaintiff takes the position that on his first service visit appellant agreed to inspect the entire system, ascertain the nature of all needed repairs to it, and perform whatever work was necessary to make the system function. Plaintiff further contends the service contract purchased by him for $30 covered the entire air conditioning system and not merely the unit sold and installed by appellant.
Appellant’s position is that in response to plaintiff’s call for service he ascertained the original condenser was not functioning and agreed only to sell and install the new unit. He further contends the service contract only covered labor for that unit.
The only written evidence is the service contract. It was written by appellant on a form intended for use in connection with the sale or service of television equipment, and the printed portions of the form are meaningless. The handwritten portion merely describes the condenser unit sold and contains a receipt for $30 for a one year service contract. Hence, there is nothing in the written evidence to establish plaintiff’s claim that appellant inspected and diagnosed his entire system and agreed to service it for one year.
The testimony shows applicant went into plaintiff’s attic and remained there for only a brief period of time. Appellant explains he went into the attic solely to ascertain the tonnage capacity of the coils to match the new condenser unit and did not enter the attic in order to inspect the entire system. Plaintiff’s testimony is that appellant went into the attic for only a short period and failed to diagnose the problems in plaintiff’s air conditioning system because of the brevity of the inspection. Taking the evidence as a whole, we do not believe appellant, an experienced air conditioning installer, would guarantee maintenance on an entire system for one year for $30 without a complete inspection of the entire system, including the components inside plaintiff’s attic. We thus conclude the $30 fee was for plaintiff to service only the condenser for one year and the short inspection was only for the purpose of matching the new unit with existing coils.
This finding is supported by the other warranty provisions implicit in the transaction. The unit installed carried a five-year guarantee on the compressor and a one-year warranty on the condenser. The one-year warranty covered parts only and, in the absence of a service contract, after thirty days the owner was responsible for the cost of any labor in repairing the condenser. The service contract between the parties to this unit was intended to fill this gap.
In short, we are satisfied appellant did not inspect or agree to inspect the entire system. His work was limited to the condenser-compressor unit and he did not contract to service the entire system. If he had inspected the entire system and worked thereon, he could be held responsible only for his fault in connection with the inspection and work. Since appellant made no inspection and performed no work on the entire system, his responsibility is confined to the compressor-condenser and does not extend to the whole system. In Dreyfus v. Lourd & Company.[1] The Supreme Court stated the rule that a contractor who installs equipment and provides a warranty in connection with the installation does not warrant the entire system into which that part is placed if he did not install, modify, or otherwise affect the entire system; when a contractor furnishes both the equipment and the work called for by his contract, his warranty is limited thereto and goes no further.
The question presented is whether appellant is in breach of his one-year service contract. The record contains much discussion of four areas of appellant’s alleged irresponsible and unworkmanlike performance in the installation of the unit. Plaintiff contends appellant: (1) mismatched the unit with the coils; (2) improperly connected the unit with the central system by *613 means of a 5/i6 inch line instead of a % inch line; (3) failed to obtain an acceptable temperature differential between air entering and leaving the system; and (4) failed to establish an acceptable head or back pressure through the lines.
Testimony on these matters is voluminous, and a technical discussion thereof would be needlessly lengthy. There is no doubt several problems occurred in plaintiff’s system after defendant installed the compressor-condenser unit. However, the air conditioning contractors, who worked on these problems and who were experts in this matter, testified the problems were in no way connected with appellant’s installation. Hence, appellant performed his service contract duties without problems and defects in the system obviously cannot be imputed to appellant’s workmanship.
Finally, we consider the claim for damages. Had appellant performed the services eventually performed by other air conditioning contractors on the problems in the attic portion of the system, he would have been entitled to further compensation. Consequently, even if he had agreed to survey and correct the defects in the entire system, his failure to perform such services did not cause any economic damage to plaintiff.
Nor does the evidence warrant an award to plaintiff for any inconvenience resulting from being deprived of a properly functioning air conditioning system. Proof of such inconvenience appears only in plaintiff’s own testimony, which was somewhat cryptic. He made several conclusionary statements regarding “aggravation”, “the problem we have sleeping” and “frustration” in trying to locate someone who would place the unit in operating condition. When asked if the unit caused him any inconvenience, plaintiff’s only answer was “quite a bit”. There was no indication or enumeration of specific instances of inconvenience or any corroboration by other witnesses, including plaintiff’s wife. Standing alone, his testimony is not sufficient evidence upon which to base a damage judgment and, of greater importance, as has been pointed out, whatever damage plaintiff may have suffered was not caused by the appellant.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the defendant-appellant, Charles T. Ge-novese, d/b/a Buddy’s Air Conditioning, Heating & Refrigeration, and against the plaintiff-appellee, Jules Tassara, dismissing said plaintiff-appellee’s suit. Costs in both courts are to be paid by the plaintiff-appel-lee.
REVERSED.

. 111 La. 21, 35 So. 369.